## VI. SUPPLEMENTAL STATEMENT OF PROCEDURAL FACTS

Plaintiff respectfully submits the following supplemental facts pursuant to the reservation of rights stated in her original Complaint. These facts directly relate to Plaintiff's allegations against Judge **J.** Philip Calabrese in his individual capacity and Ford Motor Company's use of federal rulings for improper purposes. No new claims are introduced; **this** filing provides additional context that supports the claims already pled.

On **June 26, 2025,** Plaintiff **filed** a Petition for Panel Rehearing in the Sixth Circuit in Case No. 1:24-**cv**-01811, challenging the **res** judicata-based dismissal that had relied on the flawed legal ruling in Case No. 1:**24-cv**-01313.

On **June 27,** 2025, Plaintiff filed a Rule 60(b)(2**)** Motion in Case No. 1:24-**cv**-01313, citing newly discovered **evidence** showing **Ford** never provided the required FCRA notices and instead took adverse action months **earlier**-before any communication to Plaintiff and after she filed union complaints. Ford's own internal documents contradicted its prior claims and confirmed Plaintiff **was** never properly notified. Despite this, Ford submitted court dismissals from both of Plaintiff's complaints to the OCRC and falsely characterized them as full adjudications clearing Ford of wrongdoing-misusing the **court's** language to suggest vindication.

Later that same day, upon returning to her vehicle, Plaintiff discovered that several pages had been accidentally left in her briefcase. Aware of Judge Calabrese's tendency to rule swiftly without full review, Plaintiff returned to the **courthouse** first thing on Monday, **June** 30, **2025**, arriving before opening and standing second in line. Before approaching the clerk, she confirmed that neither the June **27** motion nor a denial had been docketed. She filed the remaining pages and spoke with the clerk, who assured her that both filings would be entered by the end of the day.

The clerk's assurance proved correct-both parts of the Rule 60(b)(2) motion were docketed on June 30. However, **so** was a denial issued the same day, signed by Judge Calabrese, which made no reference whatsoever to the evidence presented, the procedural violations raised, **or** the legal basis for reconsideration under Rule 60(b)(2). Plaintiff had painstakingly outlined the judge's ongoing misapplication of the law and procedural defects throughout the filing. Rather than engaging **with** any of those concerns, the judge dismissed the motion in a single paragraph, stating only that Plaintiff was "dissatisfied with the outcome" and warning that further motions might

result in sanctions.

On **July 7, 2025**, Plaintiff filed a Motion to **Recuse** Judge Calabrese based on these events and the clear appearance of judicial retaliation. That motion was denied the very next day-**July 8, 2025-with** the Court stating **there** was "no case from which to **recuse**." However, that reasoning fails to reflect the procedural **reality that** the Rule 60(b)(2) motion, though denied, had been timely filed and was **still** subject to reconsideration **or** appeal. The assertion that no case remained is inconsistent with the purpose and legal scope of Rule 60**(b)**, which authorizes **relief** from final judgments even after dismissal. **See Gonzalez v.** Crosby, 545 U.S. 524, **529** (2005) ("Rule 60(b) allows **a** party to seek relief from **a** final judgment, and request reopening of his case, under a limited set **of** circumstances**.")**.

**Plaintiff's** civil complaint in this action (**Case** No. 1:25-cv-**01429)** was **filed** the same **day, July 8**, 2025, This supplement **is submitted** solely to complete the procedural record, and to ensure that the **Court** is fully informed of the context and timeline surrounding the alleged violations. Plaintiff **reaffirms** that she brings no claims against Judge **Calabrese** in his official capacity, and is not suing the United States. The allegations relate solely to judicial actions taken under color of law which, Plaintiff asserts**,** violated her rights under the Fifth **Amendment**.

The following section will outline Ford Motor Company's role in submitting fraudulent documents to government agencies and its subsequent retaliatory conduct, which formed the factual basis of the claims presented in this **action.**

### VI-A. FORD MOTOR COMPANY'S ROLE IN FRAUD AND RETALIATION

Plaintiff alleges that Ford Motor Company knowingly submitted fraudulent documentation to a government agency and retaliated against her following protected activity. These actions materially contributed to the deprivation *of* Plaintiff's rights and form the basis of the claims outlined in this complaint.

**1. False Submission to the Ohio Civil Rights Commission (OCRC):**
**In2024/2025** Ford submitted documentation to the OCRC that falsely characterized **Plaintiff's federal court** complaints as having been fully adjudicated and dismissed

on the merits. In reality, Ford was never served in either case (1:24-**cv**-01313 or 1:24-**cv**-01811), did not participate in the litigation, and no evidentiary hearings were held. Both complaints were dismissed before service-**one sua** sponte and the other based on res judicata flowing from the **first flawed** ruling. Nonetheless, Ford knowingly misrepresented these procedural dismissals as substantive findings of no wrongdoing. Ford explicitly told the OCRC that Plaintiff's cases were "thoroughly reviewed" by the federal court-despite having been **dismissed** without **service,** briefing, **or review** of evidence. This was a calculated effort to mislead the Commission into believing the claims were meritless and fully litigated.

Ford also submitted false testimony about a woman named Shalana Mitchell, claiming she had properly notified Plaintiff of her rejection in April **2024.** Plaintiff had never heard of this individual prior to the OCRC filing. In support of this claim, Ford submitted an internal email that **was** not addressed to Plaintiff and had **never** been received by her. Despite this**,** Ford **falsely** asserted to the Commission that the email constituted **formal** notice of rescission. These misrepresentations materially influenced the OCRC's decision-making and deprived Plaintiff of a **fair** and impartial review.

2. **Withholding of Required Notices under the FCRA:**

Ford failed to provide **Plaintiff** with a copy of her background report, a pre-adverse action notice, and a summary of rights under the Fair Credit Reporting Act (FCRA) prior to rescinding her conditional offer of employment. These notices-**legally** required to come directly **from** the employer-**were never** issued **by** Ford. Instead, **Plaintiff** only received them **in July** 2024 after filing a formal complaint through an attorney and contacting the third-party background screening agency, S2Verify. Ford attempted to retroactively comply **with** FCRA to cover its tracks**,** but the documents **were** issued far too late to satisfy legal requirements. Internal communications later confirmed that adverse action had been taken months **earlier**, further validating Plaintiff's claim that Ford violated the FCRA and then attempted to conceal the violation.

3. **Retaliatory Conduct Following Union Complaint**:

On June 18, 2024, Plaintiff was informed that her complaints to the union regarding lack of internal communication and disparate treatment were under active investigation. On June 25, 2024, Plaintiff received a phone call from union president Wilma Thomas requesting that she send over documentation showing her unanswered messages to Ford and proof that her emails were being **rejected**. Plaintiff confirmed via text at

approximately 1:30 PM that she had sent the documents. At approximately 3:20 PM that same day, Plaintiff received a call from Kristen Onesko-the Ford representative who issued the original job **offer** on March 20, **2024**-whom Plaintiff had been trying to reach for nearly three months. Ms. Onesko stated that she never received Plaintiff's messages, claimed she did not know how to block emails, and informed Plaintiff that the job had been rescinded "a long time ago" and that notice had already been provided. When Plaintiff replied that she had never received such notice and **asked** for written confirmation, Ms. Oonesko responded, "Why? I'm telling you **right** now." Plaintiff requested to speak with a supervisor, but Ms. Onesko refused. She also alleged there was an error on Plaintiff's application, and when Plaintiff requested to see it, **Ms.** Konesko again **refused**.

4. **Blocking Access to Application Materials**:

The following day, Plaintiff sent multiple emails to S2Verify requesting a copy of the job application that Ford claimed contained an error and had been used for the background check. S2Verify initially denied her request-even after **consulting** with management--and later informed Plaintiff **in** writing that **they** had been instructed by Ford to have plaintiff contact them directly and again denied providing a copy of my application..

5. **Coordinated Use of Procedural Dismissals to Avoid Accountability**: Ford's reliance on unserved**,** sua sponte dismissals as a shield against administrative accountability reflects a coordinated effort to evade responsibility. By presenting these dismissals to the Ohio Civil Rights Commission as if they were substantive rulings exonerating Ford, the company manufactured a false narrative that **Plaintiff's** complaints lacked legal merit. This manipulation derailed the OCRC investigation and contributed to the premature closure of Plaintiff's complaint without meaningful review. Together, **these** actions demonstrate a pattern of fraud, retaliation, and procedural abuse by Ford Motor Company that directly harmed Plaintiff and contributed to the constitutional violations and statutory claims set forth in this action.

## LEGAL CLAIMS

Based on the foregoing facts, Plaintiff brings the following claims for relief:

### COUNT ONE – Violation of Fifth Amendment Due Process
**(Against Judge J. Philip Calabrese, in his Individual Capacity)**

Defendant Calabrese, acting under color of federal law, deprived Plaintiff of her constitutional right to procedural due process as guaranteed by the Fifth Amendment. This includes: dismissing Plaintiff's complaint sua sponte under 28 U.S.C. § 1915(e) before service or opportunity to respond; denying a Rule 60(b)(2) motion the same day it was filed without reviewing the evidence; revoking in forma pauperis (IFP) status without notice or justification; and threatening sanctions for raising valid legal arguments. These acts, individually and collectively, obstructed Plaintiff's access to the courts and denied her a fair opportunity to litigate her claims. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (Due process requires "notice and opportunity for hearing appropriate to the nature of the case"); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009) (Recusal required where bias threatens fair adjudication).

### COUNT TWO – Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b(b)
**(Against Ford Motor Company)**

Defendant Ford Motor Company failed to comply with its obligations under the Fair Credit Reporting Act by taking adverse employment action against Plaintiff without first providing a copy of the background report, a pre-adverse action notice, or a summary of rights under the FCRA. These materials were only received by Plaintiff after she retained legal counsel and contacted S2Verify directly—well after the job offer had already been rescinded. Ford's attempt to retroactively issue these notices does not cure its violation. See *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) (reckless disregard of FCRA requirements supports liability); *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532 (E.D. Pa. 2012).

### ~~COUNT THREE – Retaliation in Violation of 42 U.S.C. § 1983~~ Removed by Plaintiff prior to filing. SB

**(Against Ford Motor Company)** ~~Removed by Plaintiff Prior to filing SD.~~

Following Plaintiff's protected activity—including filing internal complaints, escalating to the union, and contacting government agencies—Ford engaged in retaliatory conduct. This included refusing to respond to her inquiries, rejecting all other pending job applications immediately after her union complaint was escalated, and instructing third parties not to release employment-related documentation to Plaintiff. These retaliatory actions were designed to punish Plaintiff for exercising her legal rights and deter further pursuit of her claims. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (retaliation for protected activity violates constitutional rights); *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc).

### COUNT FOUR – Fraud on a Government Agency
**(Against Ford Motor Company)**

Ford knowingly submitted false and misleading information to the Ohio Civil Rights Commission (OCRC), including: misrepresenting that federal court complaints had been fully adjudicated; submitting an internal rejection email not addressed to Plaintiff as evidence of proper notification; and presenting fabricated testimony from a person Plaintiff had never interacted with. These fraudulent actions materially influenced the OCRC's investigation and denied Plaintiff a fair review of her civil rights complaint. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (fraud on judicial or administrative bodies undermines justice); *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993).

### COUNT FIVE – Denial of Access to Courts
**(Against Judge Calabrese and Ford Motor Company)**

Defendants jointly contributed to the denial of Plaintiff's right to access the courts. Judge Calabrese's premature and procedurally deficient dismissals were later used by Ford to obstruct administrative review. Ford presented these dismissals as substantive findings to the OCRC to avoid accountability, while simultaneously ignoring discovery and FCRA obligations. The coordinated misuse of judicial dismissals and obstruction of lawful inquiry constitutes a violation of Plaintiff's First and Fifth Amendment rights to petition the government and access the judicial process. See *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (access to courts is a fundamental constitutional right).

**PRAYER FOR** RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Declare that Defendant Judge J. Philip Calabrese, acting in his individual capacity, violated Plaintiff's

constitutional right to due process under **the** Fifth Amendment;

2. Declare that Defendant Ford Motor Company engaged in fraudulent and retaliatory conduct, in violation

of Plaintiff's civil rights and federal law;

3. Declare that Defendant Ford Motor Company violated the Fair Credit Reporting Act (FCRA) **by** failing to

**comply** with pre-adverse action notice requirements;

4. Enter judgment against both Defendants for compensatory damages in an amount to be determined at

trial;

5. Award punitive damages against both Defendants for willful misconduct, bad **faith**, and abuse of power; 6. Award nominal damages for the deprivation of Plaintiff's constitutional rights;

7. Issue injunctive relief, enjoining further retaliation or misuse of judicial rulings by Ford in any ongoing or

future proceedings;

8. Order Ford Motor Company to withdraw or correct **any** false or misleading submissions made to the

Ohio Civil Rights Commission regarding Plaintiff's complaints;

9. Refer the record of misconduct for appropriate federal oversight or disciplinary **review**;

10. Grant reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, or other applicable law; 11. Order any other relief the Court deems just and proper.

p1. Res Judicata Does Not Bar This Action

Ford may argue that this complaint is barred by res judicata based on prior dismissals in Case Nos. 1:24-cv-01313 and 1:24-cv-01811. This argument fails for two reasons:

- First, Ford was never served in either case and did not participate in the litigation. There was no adversarial process, discovery, briefing, or adjudication on the merits. As the Sixth Circuit has held, res judicata applies only where the parties had a "full and fair opportunity to litigate the claims." See Abbott v. Michigan, 474 F.3d 324, 331 (6th Cir. 2007).
- Second, the dismissals were procedural. The first case was sua sponte dismissed under 28 U.S.C. § 1915(e) before service. The second case was dismissed solely based on the flawed logic of the first dismissal. Neither ruling precludes this separate civil rights action addressing constitutional violations, fraud on a government agency, and post-dismissal retaliation.
  2. Ford Cannot Claim "Good Faith" Compliance with the FCRA

Ford may claim it acted in good faith under the Fair Credit Reporting Act (FCRA). This is contradicted by their own timeline and documentation:

- Ford took adverse action before providing any notice to Plaintiff, as required by 15 U.S.C. § 1681b(b)(3).
- The required documents were only received after Plaintiff filed a legal complaint and contacted the third-party screening company directly. • Ford submitted false claims to the OCRC, including fabricated testimony and a rejection email not addressed to Plaintiff, while falsely asserting she had been "properly notified" in April 2024.

Good faith is not a viable defense to FCRA violations where the record shows retroactive compliance attempts and deliberate misrepresentations.

   3. Ford's Use of Dismissed Cases as "Proof" Was Misleading and Actionable

Ford submitted court orders from unserved, dismissed cases to the OCRC and falsely claimed they were findings of no wrongdoing. The dismissals were procedural and made without Ford's participation or any evidentiary review.

- Ford explicitly told the OCRC that the court "thoroughly reviewed" the complaints, despite knowing that no review ever occurred.

- This constitutes fraud on a government agency and cannot be shielded by selective use of judicial documents out of context. See Gonzalez v. Starwood Hotels, 2010 WL 4770743 (E.D. La. 2010) (use of procedural dismissal to mislead third party constituted actionable fraud).

    4. No Statutory Immunity Applies

This lawsuit does not seek to relitigate the employment denial. It seeks relief for fraud, retaliation, and civil rights violations. None of Ford's actions—such as misusing court orders, submitting false testimony to a government agency, or blocking access to Plaintiff's employment records—are protected by any statutory immunity.

Respectfully submitted,

*[signature]*

Sarah Buntura

**4390 Southwick Blvd Brunswick, OH 44212 Plaintiff, Pro Se**

CERTIFICATE OF SERVICE

I hereby certify that on July 10 2025, I served a true and correct copy of the following documents:

- Civil Complaint under 42 U.S.C. § 1983
- Supplemental Statement of Procedural Facts
- Copy of Original Complaint

upon the following recipients:

Ford Motor Company
c/o C T Corporation System
4400 Easton Commons Way, Suite 125
Columbus, OH 43219

Randy Enochs
Ford Motor Company
1 American Road
Dearborn, MI 48126

Judge J. Philip Calabrese (in his individual capacity)
Carl B. Stokes United States Courthouse
801 West Superior Avenue
Cleveland, OH 44113

Service was made via U.S. Mail.

Respectfully submitted,

Sarah Buntura
4390 Southwick Blvd
Brunswick, OH 44212