# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

**Sarah Buntura,**
  Plaintiff,

v.

**Ford Motor Company,**
  Defendant.

FILED

AUG 21 2025

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO CLEVELAND

Case No. 1:25-cv-01429

**AMENDED COMPLAINT**


## Preliminary Statement

Plaintiff recognizes this matter has a history of multiple filings in 2024 and 2025. As a pro se litigant without formal legal training, earlier pleadings contained procedural and drafting errors. Those filings were made in good faith to protect Plaintiff's rights but did not fully comply with federal pleading standards.

This Amended Complaint replaces all prior pleadings. It corrects deficiencies, organizes the claims into a clear legal framework, and grounds each cause of action in statute, precedent, and specific facts. Plaintiff respectfully submits that the merits of these claims, not prior procedural missteps, should control.


## Jurisdiction and Venue

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and 42 U.S.C. § 1983.

2. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Ford Motor Company conducts business in Ohio and the events giving rise to these claims occurred in this Distric

## Parties

3. Plaintiff Sarah Buntura is a resident of Brunswick, Ohio.

4. Defendant Ford Motor Company is a corporation doing business in Ohio and throughout the United States.

## Factual Background

5. In early 2024, Plaintiff received a conditional offer of employment from Defendant, contingent upon successful completion of a background check.

6. Ford obtained a consumer report for employment purposes but failed to provide Plaintiff with the required pre-adverse action notice, including a copy of the report and a summary of rights under the FCRA, 15 U.S.C. § 1681b(b)(3)(A).

7. Because Ford never informed her that the offer had been rescinded, Plaintiff reasonably believed she had secured employment. In reliance, she notified her then-employer of five years. Her employer terminated her immediately, leaving Plaintiff without wages, benefits, or career stability.

8. After three months of silence, Plaintiff complained to the union president on June 18, 2024, documenting Ford's complete lack of response to her repeated communications.

9. On June 25, 2024, the union requested Plaintiff provide copies of her unanswered and blocked communications to Ford. Later that same day, Ford finally contacted Plaintiff for the first time. Kristen Onkesko, the same Ford representative who issued the offer letter, informed Plaintiff that her offer was retracted due to an alleged "error" in her application.

10. Immediately after this call, Plaintiff contacted the background check company directly to request her report and application. The company refused, explicitly stating it was "unable to provide a copy" because Ford had instructed it to direct Plaintiff back to Ford. This instruction blocked Plaintiff's statutory right to obtain her own report under the FCRA, further compounding the harm.

11. Shortly thereafter, Plaintiff retained counsel, who sent a formal complaint letter to Ford's Human Resources Director at the Cleveland Engine Plant, outlining Ford's failure to comply with the FCRA's adverse-action requirements. Within weeks, the HR Director departed the company. Plaintiff does not allege her matter caused the departure; rather, the timing demonstrates Ford's awareness of systemic FCRA compliance issues of the type committed against Plaintiff.

12. After Ford's retraction, Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC"). At the same time, Plaintiff filed two federal complaints (Case Nos. 1:24-cv-01313 and 1:24-cv-01811), both of which were dismissed sua sponte by Judge Calabrese before service of process. Ford was never served and never appeared in either action.

13. In its later submissions to the OCRC, Ford fabricated an entirely fictitious witness. Ford asserted that a supposed "Labor Representative Shalena Mitchell" had spoken to Plaintiff in April 2024 and provided reasons for the rescission of her job offer. Plaintiff has never heard of this person and never communicated with her at any time. This invented individual was created to give the false impression Ford had been responsive, when in truth Ford ignored Plaintiff for over three months and only contacted her after union involvement. The insertion of a fabricated witness into official proceedings constitutes intentional falsification of evidence.

14. Ford also obtained and mischaracterized federal dismissal orders in its OCRC submissions. Ford quoted Judge Calabrese's words out of context and represented the pre-service dismissals as substantive rulings on the merits, falsely asserting Plaintiff's claims were "meritless" and "vexatious." Ford then urged OCRC to deny Plaintiff's reconsideration request on that false basis.

15. In addition, Ford submitted Plaintiff's original application to OCRC in a manipulated format that rendered the criminal-history questions nearly unreadable. The questions asked only about felony convictions in the past seven years, misdemeanor convictions in the past three years, and pending charges. Plaintiff truthfully answered "No" to each. Ford nonetheless accused Plaintiff of dishonesty, and by shrinking and distorting the application, made it materially more difficult for OCRC to verify the truth of her answers.

16. Relying on Ford's misrepresentations, fabricated witness testimony, and manipulated documents, OCRC dismissed Plaintiff's charge in February 2025. Plaintiff did not discover the full extent of Ford's misconduct until 2025, when she finally obtained copies of Ford's submissions.

17. Within weeks of Plaintiff's OCRC complaint, Ford rejected four separate applications that had been pending for months. Each was denied in quick succession, with Ford claiming Plaintiff was "not qualified." Ford's own job postings, however, stated: "You may not check every box, but if you believe you can contribute, we encourage you to apply." The timing of the mass rejections, immediately after Plaintiff's protected activity, demonstrates retaliation.

## COUNT I – Fair Credit Reporting Act (15 U.S.C. § 1681b(b)(3)(A))

18. Plaintiff incorporates by reference paragraphs 1–17.
19. Defendant rescinded Plaintiff's conditional employment offer based on a consumer report without first providing Plaintiff with a copy of the report and a summary of rights.
20. This failure violated the FCRA's pre-adverse action notice requirement.
21. Ford's failure deprived Plaintiff of the opportunity to dispute or correct any alleged inaccuracies before an adverse decision was made.
22. Courts consistently hold that rescinding employment without notice states a valid FCRA claim. *Goode v. LexisNexis Risk & Info. Analytics Grp.*, 848 F. Supp. 2d 532, 540 (E.D. Pa. 2012); *Obabueki v. IBM Corp.*, 145 F. Supp. 2d 371, 391 (S.D.N.Y. 2001).
23. Defendant's violation was willful and reckless, warranting statutory, compensatory, and punitive damages.

## COUNT II – Violation of Civil Rights (42 U.S.C. § 1983)

24. Plaintiff re-alleges and incorporates by reference all prior paragraphs.
25. Although Ford is a private corporation, it acted under color of state law by jointly engaging with the OCRC and leveraging state procedures to deprive Plaintiff of rights secured by the Constitution and federal law.
26. Specifically, Ford knowingly submitted false and misleading evidence to the OCRC, including:

a. Asserting Plaintiff falsified her application, when she truthfully answered the limited criminal-history questions;
b. Misrepresenting pre-service federal dismissals as adjudications on the merits;
c. Quoting Judge Calabrese's words out of context to disparage Plaintiff's claims;
d. Inventing a fictitious "Labor Representative Shalena Mitchell" as a supposed witness; and
e. Submitting a distorted, nearly illegible version of Plaintiff's job application.
27. Ford's intentional use of falsified and manipulated evidence constituted joint action with the OCRC, satisfying the state action requirement under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982).
28. By using the authority of the OCRC to ratify its unlawful employment decision, Ford deprived Plaintiff of her rights to due process and equal protection under the law.
29. As a direct and proximate result, Plaintiff has suffered loss of employment opportunities, reputational harm, emotional distress, and denial of statutory rights.

### COUNT III – Fraud on a Tribunal (OCRC Proceedings)

30. Plaintiff incorporates by reference paragraphs 1–29.
31. Defendant knowingly misrepresented material facts to the OCRC, including:
a. Characterizing sua sponte dismissals as merits rulings;
b. Fabricating the involvement of a Ford representative Plaintiff never spoke with;
c. Quoting Judge Calabrese's words out of context;
d. Submitting a distorted version of Plaintiff's application questions.
32. The OCRC relied on these misrepresentations in dismissing Plaintiff's charge.
33. Such conduct constitutes fraud on a tribunal. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993).

### COUNT IV – Retaliation

34. Plaintiff incorporates by reference paragraphs 1–33.
35. Plaintiff's June 18, 2024 complaint to the union president constituted protected activity.
36. On June 25, 2024, Ford rescinded Plaintiff's job offer within days of that complaint.
37. After Plaintiff filed her OCRC charge, Ford further retaliated by rejecting four pending applications that had remained dormant for months but were suddenly denied within weeks of her complaint.
38. Each rejection cited "lack of qualifications," contradicting Ford's own job postings encouraging applicants who "did not check every box" to apply.
39. The close timing and coordinated rejection of multiple applications show retaliatory intent.
40. Retaliation for engaging in protected activity is unlawful under federal employment and civil rights laws.

**COUNT V – Independent Action for Fraud on the Court (Fed. R. Civ. P. 60(d)(3))**

41. Plaintiff incorporates by reference paragraphs 1–40.

42. Defendant has repeatedly invoked pre-service dismissals as binding adjudications, misusing judicial commentary to bar Plaintiff's claims.

43. In the OCRC proceedings, Ford argued the dismissals proved Plaintiff's claims were "meritless" and "vexatious." In this Court, Ford now claims those same dismissals were "adjudications on the merits" that bar relitigation. Both positions are false.

44. These contradictory representations demonstrate deliberate deceit aimed at securing advantage in multiple forums. Neither representation is accurate: the dismissals were sua sponte, pre-service rulings that did not involve Ford and did not adjudicate anything on the merits.

45. Fraud on the court exists when a litigant corrupts the judicial process by intentionally misleading it. See *Hazel-Atlas*, 322 U.S. at 246. Ford's contradictory use of the same documents before two tribunals — first to disparage Plaintiff's claims as meritless, then to bar those same claims as already adjudicated — is precisely the type of fraud on the court Rule 60(d)(3) was designed to remedy.

## Anticipated Defense: Res Judicata Does Not Apply

46. Defendant may argue this action is barred by res judicata based on Plaintiff's prior federal filings. That defense fails as a matter of law.

47. The earlier cases were dismissed sua sponte at the pre-service screening stage. Ford was never served in those matters. Without service, the court never obtained personal jurisdiction over Ford. See *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

48. Even aside from lack of service, the prior dismissals were sua sponte procedural rulings at the screening stage. They were not adjudications on the merits. See *Costello v. United States*, 365 U.S. 265, 285 (1961).

49. The present action is based on new and independent misconduct that arose after those dismissals, including: (a) Ford's retaliatory rejection of Plaintiff's four pending job applications; (b) Ford's fabrication of a fictitious "Labor Representative Shalena Mitchell"; (c) Ford's distortion of Plaintiff's application; and (d) Ford's misuse of Judge Calabrese's dismissal orders before the OCRC. Under *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955), res judicata does not bar claims based on new facts that did not exist earlier.

50. Finally, Ford's contradictory use of the dismissals — calling them "meritless" before OCRC while calling them "adjudications on the merits" before this Court — is itself wrongful conduct at issue here. A party cannot rely on its own fraudulent misuse of court documents to invoke res judicata. See *Hazel-Atlas*, 322 U.S. at 246.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:
A. Enter judgment in Plaintiff's favor on all Counts;
B. Award actual damages for lost wages, benefits, and future employment opportunities;
C. Award statutory and punitive damages under the FCRA;
D. Award compensatory damages for emotional distress, reputational harm, and retaliation;
E. Enter declaratory judgment that Defendant violated the FCRA and 42 U.S.C. § 1983;
F. Declare that Defendant committed fraud on the OCRC tribunal and fraud on the Court;
G. Enjoin Defendant from relying on pre-service dismissals as res judicata or mischaracterizing them as merits adjudications;
H. Correct the record to reflect that earlier dismissals were procedural and not adjudications on the merits;
I. Award Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable statutes;
J. Grant such other and further relief as this Court deems just and proper.


**Respectfully submitted,**

Dated: Aug 21, 2025


Sarah Buntura (Pro Se)


4390 Southwick
Brunswick, Ohio 44212
Email: sarahbuntura@gmail.com

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

CLEVELAND DIVISION

Sarah Buntura,

Plaintiff, Pro Se

v.

Ford Motor Company, et al.,

Defendants.

Case No. 1:25-cv-01429-PAB

## CERTIFICATE OF SERVICE

I hereby certify that on Aug 21, 2025 a true and correct copy of the following documents:

1. Notice of Filing Amended Complaint
2. First Amended Complaint

Were served by U.S. Mail, postage prepaid, upon the following:

Joseph C. Devine

Baker & Hostetler LLP – Columbus

200 Civic Center Drive, Suite 1200

Columbus, OH 43215

Email: jdevine@bakerlaw.com

Attorney for Defendant Ford Motor Company

Dated: 8-21-25

Respectfully submitted,

Sarah Buntura

4390 Southwick Blvd

Brunswick, OH 44212

# NOTICE OF FILING AMENDED COMPLAINT

Plaintiff, Sarah Buntura, hereby gives notice pursuant to Federal Rule of Civil Procedure 15(a)(1) that she is filing her First Amended Complaint as a matter of course.

No responsive pleading has been filed, and Plaintiff has not previously amended her Complaint.

Respectfully submitted,

Dated: 8-21-25

Sarah Buntura (Pro Se)

4390 Southwick Blvd

Brunswick, OH 44212

Sarahbuntura@gmail.com